905 So.2d 672 (2004)
Jessie J. CANNON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00540-COA.
Court of Appeals of Mississippi.
June 22, 2004.
Rehearing Denied October 12, 2004.
*673 Ronald Stephen Wright, Ackerman, Attorney for Appellant.
Office of the Attorney General by Charles Maris, Attorney for Appellee.
Before SOUTHWICK, P.J., LEE and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Jessie J. Cannon was found guilty by a jury of the Circuit Court of Webster County of felony DUI, third offense, pursuant to Mississippi Code Annotated § 63-11-30(1) and (2)(c) (Supp.2002). He was sentenced to serve a term of five years in the custody of the Mississippi Department of Corrections and ordered to pay a fine and court costs. The circuit judge further ruled that after serving a period of three years and abiding by all of the rules and regulations of the Department of Corrections during his incarceration, Cannon should be placed in a program of post-release supervision for two years.
¶ 2. On appeal, Cannon now asserts that after granting that part of his motion in limine restricting the State from referring to the results of a portable breath test taken when he was stopped by police, the circuit judge erred in failing to issue a limiting instruction to the jury after the arresting officer testified that he had "run it up." He further argues that the jury's verdict was contrary to the overwhelming weight of the evidence. Cannon failed to request a limiting instruction or to move for a mistrial. However, we are persuaded *674 that admission of the testimony, in light of the circuit court's ruling on the motion in limine, was plain error. Moreover, because the evidence presented does not so overwhelmingly support the State's case against Cannon, we reverse and remand for proceedings consistent with this opinion.

FACTS
¶ 3. On December 15, 2001, Jessie J. Cannon was stopped by Officer Keith Crenshaw of the Eupora Police Department after he was observed traveling south in the northbound lane of Highway 9, causing another automobile to pull over on to the shoulder to avoid a collision. Cannon, a diabetic, testified that at the time of the incident, he was en route to a nearby Shell station to get some orange juice and honey. Feeling nervous, weak and "sort of woozy," he had tested his blood sugar and found it to be dangerously low just prior to leaving his house.
¶ 4. When asked to show his driver's license, Cannon advised Officer Crenshaw that it had been suspended for driving under the influence of alcohol. He then asked if he could speak to another Eupora police officer, Perry Yates. Officer Yates arrived shortly thereafter, accompanied by a reserve officer, Shane Box.
¶ 5. Cannon was subjected to a portable breath test at the scene. No other field sobriety tests were given. The three officers presented testimony about Cannon's demeanor at the time of the stop. They testified that his eyes were bloodshot and he smelled like alcohol. Officer Yates noted that his stance and speech were normal. Officer Crenshaw found his speech slightly slurred.
¶ 6. None of the officers involved with Cannon's arrest had ever observed an individual suffering a hyperglycemic incident. Cannon's physician, Dr. James Booth, testified, that a blood sugar reading of 21, which Cannon had recorded prior to the incident, was extremely dangerous and would produce symptoms which could be mistaken for intoxication. He further stated that changes in a diabetic's glucose levels can produce ketones, leaving an acetone smell on the breath, which can be confused with alcohol.
¶ 7. After the initial stop, Cannon was transported to the Webster County Sheriff's Office, where he submitted to testing on the Intoxilyzer 5000 machine. He blew into the machine three or four times, but was unable to blow long enough to complete the test or generate an accurate reading. By his own admission, Cannon became angry and argumentative at the sheriff's office when advised after his unsuccessful attempts to take the Intoxilyzer that he would not be released. Subsequently, Cannon was placed under arrest, charged with felony DUI and held overnight in jail.
¶ 8. At the time of the incident, Cannon was in poor health. He had seen Dr. Booth several days previously, on December 10th, as well as on December 17th and 21st. In addition to diabetes, he suffered from an enlarged heart, congestive heart failure, high blood pressure and kidney problems. He was taking five different medications. He testified that he had not been drinking, stating that mixing alcohol with his various medications "will lock my kidneys, and it will throw my heart out."

LAW AND ANALYSIS

I. WHETHER THE CIRCUIT COURT ERRED IN NOT GRANTING A LIMITING INSTRUCTION CONCERNING THE TESTIMONY OF OFFICER CRENSHAW THAT THE PORTABLE BREATH TEST SHOWED THE DEFENDANT "RAN HIGH ENOUGH ON IT...."
¶ 9. Cannon filed a motion in limine to restrict the State from making any references *675 to the use of the portable breath tester at the traffic stop or the use and results of the Intoxilyzer 5000 test after he was taken to the police station. The trial judge sustained Cannon's motion to the extent that the results of the portable breath tester were ruled inadmissible. He further found that evidence of the portable breath test was admissible only for the purpose of showing probable cause. Considering the admissibility of evidence about the Intoxilyzer 5000 test, the trial judge found that administration of the test had probative value as part of the facts of the case and was not necessarily prejudicial to Cannon.
¶ 10. During the State's direct examination of Officer Crenshaw, however, the witness testified:
Q. Okay. And what happened then?
A. At that time I called Perry to the scene, and he said he would be there in a few minutes. And on Eupora 2 [sic] arrival, at that time I asked Mr. Cannon if he would submit to a portable intoxilizer [sic] test, and he said he would. And I did submit him to that, and he run high enough on it that it
MR. WRIGHT [DEFENSE COUNSEL]:  Objection, Your Honor.
BY THE COURT: Sustained.
The State then resumed questioning Officer Crenshaw about the use and purpose of the portable breath test without further objections.
¶ 11. No specific limiting instruction was requested by the defendant or given to the jury. As part of the court's instruction C-1, however, the trial judge admonished the jury generally "to disregard all evidence which I excluded from consideration during the course of the trial." Cannon now asserts that a sua sponte instruction regarding the use of Officer Crenshaw's testimony about the results of the portable intoxilyzer test should have been given to the jury.
¶ 12. Cannon did not move for a mistrial or request a cautionary, limiting instruction or a polling of the jury after his objection to Crenshaw's testimony was sustained as he did later in the proceedings when the State attempted to question Officer Yates about Cannon's social drinking habits. "The law of this State is quite clear that, in order to preserve an error of this nature for review on appeal, defense counsel must offer a mistrial motion after it is established that the evidence was, in fact, improper." Jones v. State, 724 So.2d 1066 (¶ 11)(Miss.Ct.App.1998). Because Cannon failed to ask the judge to instruct the jury to disregard the comments or move for a mistrial, the issue is not preserved for our review on appeal. Gray v. State, 831 So.2d 1221(¶ 4)(Miss.Ct.App.2002).
¶ 13. Procedural bar notwithstanding, once Crenshaw's testimony went beyond the parameters set in the motion in limine, the circuit judge should have given, sua sponte, a specific limiting or cautionary instruction to the jury. See Rose v. State, 846 So.2d 276(¶ 4)(Miss.Ct.App.2002)(even though defendant charged with firearms violation not prejudiced by testimony that officers smelled marijuana burning in his car, trial judge should have issued, sua sponte, a limiting instruction concerning the marijuana smell). Indeed, the record indicates that the circuit judge thought such instruction had been given. At the hearing on Cannon's motion for a new trial, the following exchange took place between Cannon's attorney and the judge:
BY MR. WRIGHT: ... And then when the officer on direct examination volunteered that the defendant failed the portable breath test, that the defendant was entitled, I believe, to a sui [sic] *676 sponte limiting instruction to the jury that he did not receive and 
BY THE COURT: I believe we did that, didn't we?
BY MR. WRIGHT: Well, Your Honor, I believe you did; you instructed the State that they were not to mention anything about test results.
BY THE COURT: And didn't I poll the jury?
BY MR. WRIGHT: No, sir, not on that particular question, Your Honor. You did poll the jury when they attempted to ask questions regarding the 
BY THE COURT:  his previous intoxication on some other date.
¶ 14. In Holmes v. State, 740 So.2d 952 (Miss.Ct.App.1999), this Court addressed an analogous issue involving testimony about the administration of an horizontal gaze nystagmus (HGN) test, the admissibility of which was limited by Young v. City of Brookhaven, 693 So.2d 1355 (Miss. 1997). The circuit court had granted a motion to suppress the DUI officer's testimony about his administration of the test to Holmes at the time he was stopped, shortly after leaving a Shell station where another customer told police he was "being obscene in the store." Holmes, 740 So.2d at 955 (¶¶ 3, 8). At trial, nevertheless, the officer testified about his administration of the HGN test, offering his opinion that Holmes was driving his truck "under the influence." Id. at 959 (¶ 19). After an exhaustive review of the evidence, including testimony that Holmes smelled of alcohol, his pupils were dilated and his eyes were bloodshot, his speech was slurred, he was unsteady on his feet and he talked aggressively, this Court found that the State's evidence of Holmes' guilt was not so overwhelming that allowing the officer's testimony was harmless error. Id. at 959-60 (¶ 20). Thus, the trial judge was held in error for allowing the testimony despite his initial ruling and the case was reversed and remanded. Id. In the case sub judice, where there was little unambiguous evidence to support the State's case against Cannon, the defendant clearly was prejudiced by the admission of Officer Crenshaw's testimony beyond the purpose allowed without a specific limiting instruction. We find, therefore, that the circuit judge erred in not issuing, sua sponte, a limiting instruction to the jury.

II. WHETHER THE VERDICT OF THE JURY IS CONTRARY TO THE LAW AND TO THE OVERWHELMING WEIGHT OF THE EVIDENCE IN THIS CASE
¶ 15. Cannon filed a motion for a new trial, or in the alternative, a JNOV. The circuit court denied his motion. Asserting on appeal that the jury's verdict is contrary to the law and evidence, Cannon contends that the evidence presented at trial does not support the indictment's charge that he "did willingly, unlawfully and feloniously drive or operate a motor vehicle while under the influence of intoxicating liquor, or some other substance which impaired his ability to operate a motor vehicle. . . ."
¶ 16. In determining whether a verdict is against the overwhelming weight of the evidence, the appellate court must view all evidence in a light most consistent with the jury verdict. Youngblood v. State, 759 So.2d 479 (¶ 17)(Miss.Ct.App.2000). Moreover, "this Court must accept as true the evidence presented as supportive of the verdict, and will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice." Ford v. State, 753 So.2d 489(¶ 8)(Miss.Ct.App.1999).
¶ 17. Looking, as we must, at all evidence in a light most consistent with the *677 jury verdict, there is little in the record to support a guilty verdict in this case. No results were obtained from the Intoxilyzer 5000 tests administered at the sheriff's office. Cannon's speech was variously described as normal and only slightly slurred. The officers' testimony also included the ambiguous observations that his eyes were bloodshot and he smelled of alcohol. Despite the circuit court's ruling on Cannon's motion in limine, the jury further heard Officer Crenshaw's testimony about the results of the portable breath test given at the time of the traffic stop, erroneously admitted without a specific limiting or cautionary instruction.
¶ 18. There is, however, substantial evidence contrary to the State's case. Cannon denied drinking on the evening in question; indeed, he seemed acutely aware of the ramifications of mixing alcohol with the various prescription medications he was taking. Evidence was introduced that Cannon suffered from diabetes and other serious health problems. He had left his house to get orange juice and honey, which his doctor recommended when his glucose levels were too low. His physician testified that the symptoms of a sudden change in glucose levels in a diabetic can be mistaken for intoxication.
¶ 19. We certainly do not condone Cannon's driving record. However, given the erroneous admission of evidence barred by the motion in limine and the limited evidence supporting the jury's verdict, we find that to allow the verdict to stand would be an unconscionable miscarriage of justice. Accordingly, we reverse and remand to the circuit court for proceedings consistent with this opinion.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF WEBSTER COUNTY IS REVERSED AND REMANDED. COSTS OF THIS APPEAL ARE ASSESSED TO WEBSTER COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., AND LEE, J., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING AND MYERS, JJ. THOMAS, J., NOT PARTICIPATING.
GRIFFIS, J., Dissenting:
¶ 21. I respectfully dissent.
¶ 22. On the first issue, I am of the opinion that the procedural bar, discussed in paragraph 12 of the majority's opinion, prevents our review of this issue. Indeed, the defendant's attorney is not a mere spectator at the trial. The defendant's attorney, just as the prosecutor, must participate in the trial by offering objections or motions that are necessary to ensure a fair trial. As the majority correctly points out, this Court has previously held that "[t]he law of this State is quite clear that, in order to preserve an error of this nature for review on appeal, defense counsel must offer a mistrial motion after it is established that the evidence was, in fact, improper." Jones v. State, 724 So.2d 1066, 1069 (¶ 11) (Miss.Ct.App.1998) (citing White v. State, 532 So.2d 1207, 1216 (Miss. 1988)).
¶ 23. At that moment, the defense had a choice to (a) ask for a limiting instruction, which may again highlight the objectionable testimony; (b) move the court for a mistrial; or (c) do nothing and continue with the testimony. The defense chose the third option, and this choice waived the error for our appellate review.
¶ 24. On the second issue, there was sufficient evidence before the jury to support the jury's verdict of guilty. Officer Crenshaw testified that he observed Cannon's vehicle cause another car to take evasive action to avoid a collision. When he stopped Cannon's vehicle, he learned that Cannon was driving while his license was suspended for driving under the influence. *678 Officer Crenshaw testified that Cannon's speech was slurred. Also, Officer Crenshaw testified that he was familiar with and had experience with people suffering from diabetes and low blood sugar.
¶ 25. Cannon asked to speak to Officer Yates, and Cannon asked Officer Yates if the officer could "help him out with that particular DUI." Officer Crenshaw, Officer Yates and Reserve Officer Shane Box testified about Cannon's bloodshot eyes and that they detected the smell of alcohol on Cannon's breath. Officer Yates testified that he was of the opinion that Cannon was intoxicated.
¶ 26. The majority correctly states the testimony that Cannon presented in his defense. Nevertheless, there was sufficient evidence to present this case to the jury, which the court did. The jury considered the evidence and returned a verdict against Cannon, thereby rejecting Cannon's evidence and the evidence relied upon by the majority.
¶ 27. I am of the opinion that, accepting all of the evidence favorable to the State as true and giving the State all reasonable inferences flowing from that evidence, there was sufficient evidence to support the jury's verdict. As to the weight of the evidence, I find that the verdict was not so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice, which is required for this Court to disturb the jury's verdict on appeal. See Herring v. State, 691 So.2d 948, 957 (Miss.1997) (discussing the required standard of review).
¶ 28. For these reasons, I would affirm the jury's verdict and respectfully dissent.
IRVING AND MYERS, JJ., JOIN THIS SEPARATE OPINION.